UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LINDA FISHER,
JOHN FISHER,

       Plaintiffs,

v.                             Civil Action No. 2:11-00550

ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, WOLF FINANCIAL
SERVICES, INC., DARRELL JOE WOLF,
and SCOTT FRASER,

       Defendants.


MEMORANDUM OPINION AND ORDER


       Pending is plaintiffs' motion to remand, filed August 26, 2011.  Also pending are defendant Scott Fraser's motion to dismiss, filed August 16, 2011, and defendants Wolf Financial Services, Inc. and Darrell Joe Wolf's motion to dismiss, or, in the alternative, for judgment on the pleadings, filed August 30, 2011.

       When, as here, a motion to remand and a Rule 12(b)(6) motion to dismiss are both made, it is ordinarily improper to resolve the Rule 12(b)(6) motion before deciding the motion to remand.  The question arising on the motion to remand as to whether there has been a fraudulent joinder is a jurisdictional inquiry.  See Batoff v. State Farm Ins. Co., 977 F.2d 848, 852

(3rd Cir. 1992); cf. Mayes v. Rapoport, 198 F.3d 457, 460 (4th 1999) (observing that the propriety of removal and fraudulent joinder are jurisdictional questions).

## I.   Background

This dispute arises from the denial of an insurance claim stemming from water damage to residential property located in Hedgesville, West Virginia.  Plaintiffs Linda and John Fisher are residents of Maryland and own the Hedgesville property that is the subject of the underlying insurance claim.  (Compl. ¶ 1). Defendant Allstate Property and Casualty Insurance Company ("Allstate") is an out-of-state corporation with its principal place of business in Illinois.  (Notice of Removal ¶ 7(a)). Allstate is licensed by the West Virginia Office of the Insurance Commissioner to underwrite homeowner's insurance policies within the state.  (Allstate Ans. ¶ 2).  Defendant Wolf Financial Services, Inc. ("Wolf Financial") is in the business of selling homeowner's insurance in West Virginia.  (Wolf Financial Ans. ¶ 4; Notice of Removal ¶ 7(c)).  Defendant Darrell J. Wolf sells insurance in West Virginia as an agent for Allstate.  (Wolf Financial Ans. ¶ 5).  Wolf Financial and Wolf (collectively, the "nondiverse defendants") are residents of Maryland.  (Id. ¶¶ 4-5; Notice of Removal ¶ 7(c)).  Defendant Scott Fraser is a resident of Virginia and was at relevant times

2

employed by Allstate to inspect and adjust insurance claims in West Virginia.  (Allstate Ans. ¶ 3).  The following factual recitation is taken from the record.

In March 2010, plaintiffs purchased a home at 347 Winter Camp Trail, Hedgesville, West Virginia.  (Compl. ¶ 9). This was not the plaintiffs' primary residence.  (Id.). Concurrent with the property purchase, plaintiffs obtained a homeowner's insurance policy from Allstate through the nondiverse defendants to cover their Hedgesville home.  (Id. ¶¶ 10-11; Wolf Financial Ans. ¶ 11).  Prior to purchase, plaintiffs contracted with an engineer and termite inspection company to inspect the home, including the crawl space.  (Compl. ¶¶ 12-14). Neither inspection revealed mold damage.  (Id. ¶ 14).  On June 1, 2010, a termite inspector installed vents in the crawl space at the home and found no signs of leaks or fungal growth in the area.  (Id. ¶ 15).

On July 5, 2010 plaintiffs left their Hedgesville home around 6:30 p.m.  (Id. ¶ 16).  Prior to departing, plaintiffs observed no signs of water leakage in the kitchen, dining room, or hallway.  (Id.).  However, when they returned eleven days later around 9:30 p.m. on July 16, 2010, plaintiffs "noticed water soaking the dining room and hallway carpets and wetness in the kitchen."  (Id. ¶ 17).  Upon investigation, plaintiffs

3

discovered the leak originated from a waterline connected to the refrigerator.  (Id. ¶ 18).

That next day, July 17, 2010, plaintiffs contacted Allstate and reported a claim for the water damage.  (Id. ¶ 19). The Fishers advised Allstate and its adjuster, Mr. Fraser, that, prior to returning to their home on July 16, they had not seen any water in the dining room and hallway, and that they had not been to the property since July 5.  (Id. ¶ 20).  With respect to the claim, Allstate determined the date of loss to be July 4, 2010.  (Id. ¶ 21).  On July 17, Rodney Trenary of Puroclean, a water mitigation firm, was hired by Allstate to inspect the property.  (Id. ¶ 22; W. Va. Ins. Comm'r, Rec. Decision of Hearing Examiner ("Commissioner Decision") at 2).  Trenary took a "cursory look" at the inside of the home and spent a few minutes in the crawl space.  (Id.).  At this time, Trenary discovered significant mold presence in the home.  (Compl. ¶¶ 23-24; Commissioner Decision at 2).  Trenary never returned to the property.

Prior to the completion of the investigation, on July 26, 2010, Fraser sent the Fishers a letter explaining that their homeowner's policy excluded losses consisting of or caused by mold.  (Compl. ¶ 26).  On July 27, Michael Ritter, an industrial hygienist hired by Allstate, inspected the residence, taking

4

several pictures.  (Id. ¶ 27).  Ritter advised Fraser that he
could not give a definitive or general timeframe as to when the
water leak began.  (Id.).  Neither Fraser, nor any employee of
Allstate or any licensed adjuster, inspected the property.  As
of July 27, no remediation had been done at the property, a fact
of which Fraser was aware.  (Id. ¶ 28).

         On July 29, Fraser sent plaintiffs a letter denying
their claim, explaining that the leak was found to have been
continuous or repeated over a period of weeks, months, or even
years.  (Id. ¶ 29).  Fraser stated that his investigation
concluded that the leak had been ongoing for more than several
weeks, based on the saturation level of the wood, the amount of
mold, and the deterioration of the subflooring.  (Id. ¶ 30).
During the pendency of plaintiffs' claim, nondiverse defendant
Wolf was "in contact with Allstate and Fraser . . ." and
"participated in the events leading up to . . . [the] denial of
the Fishers' insurance claim."  (Pl.'s Reply 2).

         As a result of the claim denial, plaintiffs bore the
expense of fixing their Hedgesville residence.  (Compl. ¶ 41).

         Plaintiffs instituted this action in the Circuit Court
of Kanawha County on July 6, 2011.  Defendants removed on August
12, 2011, invoking the court's diversity jurisdiction.  The

complaint sets forth six counts: Count I, Breach of Contract against Allstate; Count II, Violations of the West Virginia Unfair Trade Practices Act and Insurance Regulations ("UTPA");[1] against all defendants; Count III, Common Law Bad Faith against Allstate and the nondiverse defendants; Count IV, Reasonable Expectations against Allstate;[2] Count V, Negligence against Allstate and the nondiverse defendants; Count VI, Declaratory Judgment.  (See id. ¶¶ 43-78).[3]

Plaintiffs have moved to remand, asserting that the nondiverse defendants defeat complete diversity and that this court thus lacks subject matter jurisdiction.  In opposition to remand, defendants claim that the nondiverse defendants were joined solely for the purpose of defeating diversity jurisdiction.

---

[1] The claim in Count II will be referred to as plaintiffs' "UTPA claim."

[2] While Count IV makes allegations against Allstate and unnamed "defendants," the Fishers appear to abandon any Count IV claim against the nondiverse defendants in their supporting memorandum.  (See Pl.'s Mem. 5 ("Plaintiffs' complaint squarely sets forth viable causes of action against [the nondiverse defendants] in count II, III and V.")).

II.    Motion to Remand

A.    Governing Standard

        "A defendant may remove any action from a state court to a federal court if the case could have originally been brought in federal court."  <u>Yarnevic v. Brink's, Inc.</u>, 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441).  Federal district courts have original jurisdiction over actions between citizens of different states in which the matter in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).

        The doctrine of fraudulent joinder permits a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999).  Our court of appeals lays a "heavy burden" upon a defendant claiming fraudulent joinder:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is <u>no possibility</u> that

---

        [3] On November 1, 2011, the court entered an agreed order dismissing Counts III and IV as against defendant Fraser.

7

> the plaintiff would be able to establish a cause of
> action against the in-state defendant in state court;
> or [t]hat there has been outright fraud in the
> plaintiff's pleading of jurisdictional facts."

Id. at 464 (emphasis in original) (quoting Marshall v. Manville

Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)).  The applicable

standard "is even more favorable to the plaintiff than the

standard for ruling on a motion to dismiss."  Hartley v. CSX

Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).  Indeed, "'the

defendant must show that the plaintiff cannot establish a claim

against the nondiverse defendant even after resolving all issues

of fact and law in the plaintiff's favor.'"  Mayes, 198 F.3d at

464 (quoting Marshall, 6 F.3d at 232–33)).


        As Hartley illustrates, fraudulent joinder claims are

subject to a rather black-and-white analysis in this circuit.

Any shades of gray are resolved in favor of remand.  See

Hartley, 187 F.3d at 425.  At bottom, a plaintiff need only

demonstrate a "glimmer of hope" in order to have his claims

remanded:

> In all events, a jurisdictional inquiry is not the
> appropriate stage of litigation to resolve . . .
> various uncertain questions of law and fact .  .  .
> Jurisdictional rules direct judicial traffic.  They
> function to steer litigation to the proper forum with
> a minimum of preliminary fuss.  The best way to
> advance this objective is to accept the parties joined
> on the face of the complaint unless joinder is clearly
> improper.  To permit extensive litigation of the
> merits of a case while determining jurisdiction
> thwarts the purpose of jurisdictional rules.

8

* * * *

> We cannot predict with certainty how a state court and
> state jury would resolve the legal issues and weigh
> the factual evidence in this case.  [Plaintiff's]
> claims may not succeed ultimately, but ultimate
> success is not required . . . . Rather, there need be
> only a slight possibility of a right to relief.  Once
> the court identifies this glimmer of hope for the
> plaintiff, the jurisdictional inquiry ends.

Id. at 425-26 (citations omitted).  In determining "whether an

attempted joinder is fraudulent, the court is not bound by the

allegations of the pleadings, but may instead consider the

entire record, and determine the basis of joinder by any means

available."  Mayes, 198 F.3d at 464 (internal quotations

omitted).

Inasmuch as plaintiffs do not allege any fraud in the

pleading, the only question for fraudulent joinder purposes is

whether plaintiff has any possibility of recovery in state court

against the nondiverse defendants.  The complaint alleges four

counts against the nondiverse defendants: Count II (UTPA

violations); Count III (common law bad faith); Count V

(negligence); and Count IV (reasonable expectations), which

plaintiffs appear to have abandoned.  See supra note 2.

B.   UTPA Claims

The UTPA is a comprehensive statute designed to

"regulate trade practices in the business of insurance" in the State of West Virginia.  W. Va. Code § 33-11-1.  Like the tort of bad faith, the UTPA "appl[ies] only to those persons or entities and their agents who are engaged in the business of insurance."  Syl. Pt. 2, <u>Hawkins v. Ford Motor Co.</u>, 566 S.E.2d 624, 625, (W. Va. 2002).[4]  The issue here is whether the complaint alleges one or more violations of the Act such that plaintiffs have a possibility of relief against the nondiverse defendants.  <u>See</u> § 33-11-4.

The complaint generally alleges that all defendants violated the UTPA and accompanying regulations through "selling" plaintiffs the underlying policy, and "adjusting," "handling," "and/or investigating" plaintiffs' claim.  (Compl. ¶¶ 51, 56; Pl.'s Mem. 5; Pl.'s Reply 2).  The allegations appear to be aimed at the practices proscribed by § 33-11-4(9), a section titled "Unfair claim settlement practices."  Plaintiffs further allege that defendants' violations of the UTPA "occurred with such frequency as to amount to general business practices."

---

[4] The statute "includes any individual, company, insurer, association, organization, society, reciprocal, business trust, corporation, or any other legal entity, including agents and brokers" within the definition of "person."  § 33-11-2(a).  It is undisputed that the nondiverse defendants -- Wolf, an individual, and Wolf Financial, a corporate entity -- fall under the Act's definition of "person."  <u>Id.</u>

(Id. ¶ 53).  Defendants assert that plaintiffs have failed to sufficiently allege that the nondiverse defendants committed one or more of the acts enumerated in § 33-11-4.

When viewed through the generous lens of remand, the court cannot say that, with respect to their UTPA claims, plaintiffs have no possibility of relief against the nondiverse defendants.  According to plaintiffs, nondiverse defendant Wolf was "in contact with Allstate and Fraser during the investigation and adjusting" of plaintiffs' insurance claim and "participated in the events leading up to" its denial.  (Pl.'s Reply 2).  Moreover, plaintiffs claim that Allstate and Fraser were aware of Wolf's involvement in the decision to deny coverage "since they spoke with Wolf and made note of it in their call log" during the relevant period.  (Pl.'s Reply 2 n. 1).  Resolving all issues of fact and law in the plaintiff's favor, defendants have failed to show that these allegations cannot possibly implicate one or more unfair claim settlement practices set forth in § 33-11-4(9) against the nondiverse defendants.

Defendants counter that the nondiverse defendants only "sell insurance . . . . [and] did not adjust or handle Plaintiff's claim under the Allstate policy."  (Def.'s Resp. 4).  Even if defendants are ultimately correct, the fraudulent

joinder standard resolves such factual disputes at this stage in favor of the party seeking remand.  And while the complaint may fail to set forth sufficient factual allegations to withstand a motion to dismiss the nondiverse defendants, that is not the standard here.  All that plaintiffs need to show is a "slight possibility of a right to relief."  <u>Hartley</u>, 187 F.3d at 426. They have done so.

Inasmuch as plaintiffs have shown a possibility of relief with respect to the UTPA claims against the nondiverse defendants, the court need not address plaintiffs' other claims against the nondiverse defendants.  Accordingly, the court concludes that Wolf and Wolf Financial are not fraudulently joined.

### III.  Conclusion

Based upon the foregoing discussion, it is ORDERED as follows:

1.  That plaintiff's motion to remand be, and it hereby is, granted; and

2.  That this action be, and it hereby is, remanded for all further proceedings to the Circuit Court of Kanawha County.

12

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and a certified copy to the Circuit Court of Kanawha County.

DATED: November 30, 2011

John T. Copenhaver, Jr.
United States District Judge